## IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

| | |
|---|---|
| AHE REALTY ASSOC, LLC, a Florida limited liability company, | Case No.: 17-029381 CA 01 |
|       Plaintiff, | |
| vs. | |
| MIAMI-DADE COUNTY, FLORIDA, THE VILLAGE OF MIAMI SHORES, and ISMAEL NARANJO, individually, and in his capacity as Building Official for The Village of Miami Shores, | |
|       Defendants. | |

### CIVIL ACTION SUMMONS

THE STATE OF FLORIDA
To each Sherriff of the State:

      **YOU ARE COMMANDED** to serve this *Summons* and a copy of the *Complaint* in this action on the **Defendant, Miami-Dade County, Florida, by serving the Mayor:**

          **Carlos A. Gimenez**
          **111 N.W. 1ˢᵗ Street, 29ᵗʰ Floor**
          **Miami, Florida 33128**

      **Defendant is hereby required to serve written defenses to the Complaint on Jason R. Alderman**, Plaintiff's attorney, whose address is: **The Alderman Law Firm, Shoreview Center, 9999 NW 2nd Ave, Suite 211, Miami Shores, Florida 33138,** within twenty (20) days after service of this summons upon that Defendant, exclusive of the day of service, and to file the original of said written defenses with the Clerk of said Court either before service on Plaintiff's attorney or immediately thereafter.  If a Defendant fails to do so, a default will be entered against the Defendant for the relief demanded in the complaint or petition.

      **WITNESS** my hand and the seal of said Court this __26ᵗʰ__ day of December 2017.

          HARVEY RUVIN

          Clerk of the Courts

          GRISELLE LONDONO

      By: _____
          Deputy Clerk

Jason R. Alderman, FBN 172375
THE ALDERMAN LAW FIRM
9999 NE 2ⁿᵈ Ave, Suite 211
Miami Shores, FL 33138
Ph. No.: (305) 200-5473
Fax. No.: (305) 200-5474
email: Jalderman@thealdermanlawfirm.com

Filing # 65697626 E-Filed 12/21/2017 12:31:47 PM

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA**

AHE REALTY ASSOC, LLC, a Florida limited
liability company,

       Plaintiff,

vs.

MIAMI-DADE COUNTY, FLORIDA, THE
VILLAGE OF MIAMI SHORES, and ISMAEL
NARANJO, individually, and in his capacity as
Building Official for The Village of Miami
Shores,

       Defendants.

Case No.:

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, AHE Realty Assoc, LLC ("AHE"), a Florida limited liability company, sues

Defendants, Miami-Dade County ("MDC"), the Village of Miami Shores ("MSV"), and Ismael

Naranjo ("Naranjo"), both in his individual capacity and in his capacity as "Building Official" for

MSV, and states as follows:

**PARTIES, JURISDICTION & VENUE**

1.     Plaintiff, AHE, is a duly organized and existing limited liability company

organized under the laws of the State of Florida.

2.     Defendant, MDC, is a chartered political subdivision of the State of Florida within

the meaning of Article 8, Section 1 of the Florida Constitution.

3.     Defendant, MSV, is a government municipality charter under the laws of the State

of Florida.

4.     Defendant, Naranjo, is *sui juris* and a resident of Miami-Dade County, Florida.

Naranjo occupies the position of "Building Official" with MSV.

**The Alderman Law Firm**
9999 NE 2nd Ave., Suite 211 ● Miami Shores, FL 33138 ● ph. 305.200.5473 ● fax. 305.200.5474

5.     This is an action within the jurisdiction of this Court, exclusive of interest, costs, and attorneys' fees.

6.     Venue is proper in Miami-Dade County pursuant to Fla. Stat. § 47.011 in that i) the Defendants reside within said county; and, ii) all of AHE's causes of action alleged herein accrued exclusively within said county.

## GENERAL ALLEGATIONS

**A.     The Building, the North Egress Door, and Informal Governmental Action by MSV.**

7.     Plaintiff, AHE, is the owner of certain commercial property located within the boundaries of Defendant MSV. The property has a street address of 9999 NE 2nd Ave, Miami Shores, Florida 33138 and is improved with a three (3) story, mix-use office rental building (the "Building"), commonly referred to as the "Shoreview Center." The tenant mix of the Building includes professional offices, medical offices, and restaurants.

8.     The designated front entrance of the Building faces west, curbside to Northeast Second Avenue. The back or rear of the building faces east, and has a designated entrance as well. The designated "side doorways" are situated on the north and south sides of the Building.

9.     The side doorways are at the bottom of stairwells. The doors for these doorways are "egress" only doors, that is, the doors only open for persons exiting the building. This is because the door system/ locking mechanism only permits the doors to open for egress and not ingress, whereas the doors for the front and rear entrances allow both ingress and egress. At all times material hereto, the door systems, as described herein, complied with all applicable building and fire codes, and were permitted and approved by all applicable governing authorities. Relevant here, under the applicable Florida building and fire codes, the doors on the side entrances are required to be limited to egress only because they are located at the bottom of stairways.

10.     Upon information and belief, on or about October 12, 2017, the Building's first floor, northside egress only door system (the "North Egress Door") was vandalized and/or damaged by an ambulatory patient delivery driver while transporting a patient to Fresenius Dialysis, a tenant on the first floor of the Building. A true and accurate picture of the North Egress Door is attached hereto as Exhibit A. It is believed that the driver kicked the door, attempting to gain ingress access through the North Egress Door. The resulting kick caused the doorframe for the North Egress Door to bend thereby impacting the door's locking mechanism. The aforesaid resulting damage shall hereinafter be referred to as the "Vandalized Lock."

11.     As a result of the Vandalized Lock, the North Egress Door became susceptible to occasional *minor* jamming.

### (MSV's Inspection and Informal Notice of Violation to AHE)

12.     At a time unknown to Plaintiff AHE, Defendant MSV, through Defendant Naranjo, in Naranjo's capacity as Building Official, and acting under the "color of law", inspected the North Egress Door. Upon information and belief, the inspection took place on or about October 13, 2017 (the "10/13 Inspection"). As a result of the 10/13 Inspection, Defendant MSV, through Naranjo, adjudicated the fact that the North Egress Door had been intentionally locked by Plaintiff AHE.

13.     At or around 4:30 p.m. on October 13, 2017, Defendant Naranjo, in his capacity as Building Official, and acting under the "color of law", conducted a meeting (the "10/13 Onsite Meeting") with Plaintiff AHE's property manager Julio Martinez ("Martinez") at the Building to discuss his adjudication of the "locked" North Egress Door. At this Meeting, MSV, through its Building Official Naranjo, communicated his adjudication to AHE of the "locked" door and found AHE in violation of certain *unidentified* codes and ordinances. Further, at this time, MSV, through

its Building Official Naranjo, rendered a *verbal* violation on AHE and rendered the following *verbal* cure instructions to AHE:

      a.    "unlock" the North Egress Door; and,

      b.    Replace the entire door system so that the North Egress Door (and south door for that matter) operated as both egress and ingress doors.

(Defendant Naranjo's violation and instructions communicated at the 10/13 Onsite Meeting shall hereinafter be referred to as the "Informal Notice of Violation.").

14.    Plaintiff, AHE, through its property manager Julio Martinez, vehemently denied that the North Egress Door was locked.  In response to the Informal Notice of Violation, AHE, through Martinez objected to the Informal Notice of Violation and, in doing so, indicated the following:

      a.    AHE disputed MSV/ Naranjo's adjudication of the North Egress Door as having been "locked" and notified same that the door may appear locked due to the occasional, partial jamming caused by the Vandalized Lock;

      b.    AHE had already taken affirmative steps necessary to repair the North Egress Door from jamming/ and Vandalized Lock, including, ordering appropriate, custom replacement door framing and hardware; and,

      c.    AHE objected to the MSV/ Naranjo verbal instructions to change the North Egress Door system into both an ingress and egress system from its current status as an egress only door system.

15.    In response to Plaintiff AHE's objections to the Informal Notice of Informal Violation referenced in the immediately preceding paragraph, MSV, through Naranjo, rescinded its verbal Notice of Informal Violation, and informed AHE that "Once you put the property system in like you are thinking of you will be o.k." and "go unlock the door and file a police report."  The "property system" referred to by Naranjo is "replacement steps" identified in the immediately preceding paragraph, that is, repairing and replacing the North Egress Door/ Vandalized Lock to render it fully functional as an egress only door.

16.     The 10/13 Onsite Meeting concluded with Martinez unjamming the door, rendering it fully functional as an egress only door.

17.     Subsequent to the 10/13 Onsite Meeting, Defendant MSV neither prepared nor served Plaintiff AHE with a formal and proper Notice of Violation. Nor did MSV notify or attempt to convene any quasi-judicial panel or hearing, e.g., MSV Code Enforcement Board Hearing, permitting AHE an opportunity to challenge or contest the Informal Notice of Violation and/or verbal violations and/or verbal instructions and/or adjudication of the North Egress Door having been "locked." Further, at no time has Defendant Naranjo prepared any affidavit or given any sworn testimony supporting, attesting to, or providing any evidentiary basis for the Informal Notice of Violation and/or verbal violations and/or verbal instructions and/or adjudication of the North Egress Door having been "locked."

**(10/24 Informal Email Violation)**

18.     On October 24, 2017 at 8:12 a.m., Defendant MSV, through its Building Official Defendant Naranjo, emailed Martinez stating the following:

> The condition of the egress door at 9999 NE 2nd Avenue creates hazards with respect to means of egress and fire protection as provided under the Florida Building Code and Miami Dade County Code for the particular Occupancy. You are hereby order [*sic*] to maintain the egress door open at all time [*sic*]. The door should be operable from both sides without the use of a key, tool and or special knowledge. Failure to comply with this order immediately will result in an unsafe structure and the building will be order [*sic*] to be vacated immediately.

(the "10/24 Informal Email Violation"). (Emphasis supplied).

19.     According to the 10/24 Information Email Violation, and notwithstanding the fact that MSV previously consented to repair of the North Egress Door as an "egress" only door, Defendant MSV, through Naranjo, ordered that the North Egress Door be replaced with a door

system that is *both* egress and ingress (i.e., "[t]he door should be operable from both sides without the use of a key, tool and or [*sic*] special knowledge.").

20.     Subsequent to receipt of the 10/24 Informal Email Violation, Defendant MSV neither prepared nor served Plaintiff with any Notice of Violation concerning the North Egress Door and/or Vandalized Lock.  At no time has Defendant MSV ever provided AHE with any citation or identified any of the applicable codes and ordinances that Naranjo contends AHE has violated or is violating.  Nor did MSV notify or attempt to convene any quasi-judicial panel or hearing, e.g., MSV Code Enforcement Board Hearing, permitting AHE with notice and an opportunity to challenge or contest the Informal Notice of Violation, the 10/24 Informal Email Violation, or any violation for that matter.

21.     The 10/24 Informal Email Violation is contrary to MSV's rescission of the Informal Notice of Violation, that is, MSV's approval of the replacement of the door system as an <u>egress</u> only door system.

### (10/27 Naranjo Email)

22.     On or about October 27, 2017, Defendant MSV, through its Building Official Naranjo, sent AHE's counsel the email attached hereto as Exhibit B (the "<u>10/27 Naranjo Email</u>").

23.     In the 10/27 Naranjo Email, Defendant MSV instructs AHE that "[e]gress doors, should be complied with the requirements of Section 108 of the 2014 Florida Building Code."

24.     Section 108 of the Florida Building Code (titled, "Temporary Structures and Uses") applies to "temporary structures."  At all times material hereto, the Building is not a "temporary structure" within the meaning of Section 108 of the 2014 Building Code.

25.     After receipt of the 10/27 Naranjo Email, Defendant MSV neither prepared nor served Plaintiff with any Notice of Violation concerning the North Egress Door and/or Vandalized

Lock. At no time has Defendant MSV ever provided AHE with any citation or identification of the applicable codes and ordinances that Naranjo contends AHE has violated or is violating. Nor did MSV notify or attempt to convene any quasi-judicial panel or hearing, e.g., MSV Code Enforcement Board Hearing, permitting AHE with notice and an opportunity to challenge or contest the Informal Notice of Violation, the 10/24 Informal Email Violation, or any violation for that matter.

### (10/30/17 Declaration of Unsafe Structure by MSV)

26. On or about October 30, 2017, MSV through its Building Official Naranjo, acting under the "color of law", posted an "Unsafe Building" orange notice declaring the Building as "unsafe" within the meaning of Section 8-5 of the Miami-Dade County Code ("MDCC"). A true and correct copy of the notice is attached hereto as Exhibit C and shall hereinafter be referred to as the "Unsafe Building Notice." MSV's action of declaring the Building as an "unsafe structure" (within the meaning of § 8-5 of MDCC Code) shall hereinafter be referred to as "Unsafe Structure Declaration."

27. On the Unsafe Building Notice, Defendant Naranjo illegally and falsely claimed that he and Defendant MSV rendered the declaration on "October 13, 2017," when in fact the notice and declaration was made on October 30, 2017.

28. On or about October 30, 2017, AHE, through its property manager Julio Martinez, met in the afternoon with Tom Benton, City Manager for Defendant MSV to discuss MSV's Unsafe Declaration and the impact and ramifications of the Unsafe Building Notice. During this meeting, Mr. Benton informed AHE that MSV has "rescinded" its demand that the side entrance door systems for the Building be replaced with ingress and egress door systems, as opposed to egress only doors, and that AHE could temporarily cure the Unsafe Structure Declaration by

placing a wood door stopper to keep the door open and from jamming until its replacement, egress only door system was installed.

29.     Immediately after the meeting with Tom Benton, but no later than close of business on October 30, 2017, the aforesaid meeting, AHE, through its property manager Julio Martinez, immediately complied with the aforesaid request by inserting a "dab" of carboard less than half the size of a quarter into the Vandalized Lock system thereby temporarily converting the door from egress only door to an ingress and egress door.  AHE notified MSV that it had complied with Mr. Benton's cure instructions.

30.     On the morning of October 31, 2017, the Unsafe Notice remained posted to the Building and in full force and effect.  The Unsafe Building Notice requires the evacuation of the Building.   Having complied with Mr. Benton's cure instructions, AHE, through Martinez attempted to contact Mr. Benton and Defendant Naranjo, neither of whom were available.  Given that Defendant MSV failed at this time to remove the Unsafe Building Notice or Unsafe Structure Declaration, AHE commenced preparing for an evacuation of the Building.

31.     On the morning of October 31, 2017, AHE, through Julio Martinez, in connection with evacuating the Building, notified Defendant Naranjo that the dialysis patients and office staff would be evacuated pursuant to his standing orders of evacuation set forth in the standing Unsafe Structure Declaration and Unsafe Building Notice.  Only then, when faced with the prospects of sick dialysis patients being denied lifesaving treatment due to his erroneous orders, did Naranjo remove the Unsafe Building Declaration and Unsafe Building Notice.

32.     On October 31, 2017, Defendant Naranjo, on behalf of MSV, notified AHE that it was "rescinding" the Unsafe Building Declaration and Unsafe Building Notice through email.  A

true and correct copy of this email is attached hereto as Exhibit D and shall be hereinafter referred to as the "Rescission Email."

### (Letter Violation)

33.     On or about October 30, 2017, and either simultaneous or shortly after posting the Unsafe Building Notice and making the Unsafe Structure Declaration, Defendant MSV, through Naranjo, its Building Official, sent an "Unsafe Building Letter Violation" letter to Plaintiff AHE's bank as purported notice on AHE.  A true and correct copy of the said letter is attached hereto as Exhibit E and shall hereinafter be referred to as the "Letter Violation."

34.     The Letter Violation identifies a purported case number "UB-10-17-2462" ("Fake Case Number").  The Fake Case Number is a lie and falsehood in that no such case exists with Defendant MDC or MSV at the time the Letter Violation was sent.

35.     As of the time of the filing of this Complaint, Defendant MSV has failed and refuses to rescind the Letter Violation or issue any official document deeming the Building no longer an "unsafe structure" or declaring the building condition as cured or safe.  As a result, there is no record in the public records for MSV or MDC from which any person can determine that the Unsafe Building Notice and/or Unsafe Structure Declaration is no longer in force or effect or otherwise cured, rescinded, etc.  Further, because there is no such official record, and because an "unsafe declaration" provides for monetary fine and liens against the Property, title to the Building/ property is clouded by Defendant MSV and Naranjo's actions.

36.     The Unsafe Building Notice, Unsafe Structure Declaration, and the Letter Violation required the immediate evacuation of the Building and its tenants.

37.     The Unsafe Building Notice, Unsafe Structure Declaration, and the Letter Violation had the legal effect of adjudicating the Building an "unsafe structure" under §8-5 of the MDCC

thereby subjecting the Building to the *fine* of demolition (§8-5(d)(3) & (g)) or property forfeiture and sale (§8-5(k)(4)).

38.     The Unsafe Building Notice, Unsafe Structure Declaration, and the Letter Violation, interfered with Building's tenants' right to possession of their demised premises pursuant to their lease agreements with landlords and suspended their obligations to make rental payments.  Conversely, the Unsafe Building Notice, Unsafe Structure Declaration, and the Letter Violation subjects Plaintiff AHE to significant lost rental income and damage claims by tenants in excess of millions of dollars.

39.     The Unsafe Building Notice, Unsafe Structure Declaration, and the Letter Violation placed Plaintiff AHE in the position of default under its mortgage with its mortgagee thereby subjecting AHE to the possibility of foreclosure, and default interest.

40.     The Unsafe Building Notice, having been published on the Building for all of its tenants' to view, has diminished the value of the Building and corresponding rental income Plaintiff AHE can receive under future leases and lease renewals.

**(AHE's Demand for Due Process)**

41.     On November 3, 2017, Plaintiff AHE, through counsel, demanded of MSV, through the City Clerk, and Naranjo, as Building Official, that MSV conduct a due process hearing so that AHE could challenge the Unsafe Structure Declaration.  A true and correct copy of AHE's Counsel's demand letter dated November 3, 2017, is attached hereto as Exhibit F and shall hereinafter be referred to as "11/3/17 Request for Due Process Hearing" or "11/3/17 Hearing Request."

42.     On or about November 9, 2017, Defendant, MSV, through its City Attorney Richard Sarafan, sent Plaintiff AHE the letter attached hereto as Exhibit G (the "Sarafan Letter"). In relevant part, MSV, through its City Attorney, states:

> As I am sure you understand, the Village disputes much of what is contained in your email.  Your email itself, and the attachments thereto, seem to confirm that the Building Official had been in communication with your client's representative for weeks trying to get your client to comply with the clear provisions of law being violated by the locked fire exit door, without appropriate action under the Unsafe Structures provisions available to him. Almost immediately thereafter, your client corrected the violation, and, upon that fact being confirmed by Mr. Naranjo, he in turn confirmed that the violation had been cured.  Under all the circumstances, we are a bit confused about exactly what it is you now are seeking in your email.
>
> . . .
>
> Accordingly, the Village has notified the Board Administration Section of the County's Department that deals with the County's Unsafe Structures Board and is forwarding then a copy of your Notice of Appeal.  Upon the County's receipt and review thereof, we understand they will be contacting both the Village and you directly to provide information as to how the matter will be addressed.  Thank you.

(Emphasis supplied).

43.     At no time whatsoever has AHE been provided with a Notice of Violation or a notice from MSV, let alone one that identifies "clear provisions of law" (as suggested in the Sarafan Letter) that AHE is alleged to have violated.

**B.     The Requirements of MDC § 8-5, Its Application to Plaintiff by MSV, and MDC and MSV's Joint Enforcement of § 8-5.**

44.     The authority relied upon by MSV and Naranjo in deeming the Building an "Unsafe Structure" and the posting of the Unsafe Building Notice is Section 8-5 of the MDCC.  In ordering the evacuation of the Building in the Unsafe Building Notice, MSV and Naranjo relied upon the "emergency action" provisions of § 8-5.

*Administrative Due Process Requirement*

45.   Section 8-5(a) provides that:

> . . . Notwithstanding the provisions of this Section, a municipality may establish by ordinance its own administrative process to address unsafe structures within municipal boundaries, including a process of appeal of decisions of the Building Official that structures are unsafe. Following adoption of such ordinance, the municipality shall be solely responsible for the conduct of its own process and appeals, and for the enforcement of the laws governing unsafe structures within the municipal boundaries, including a process of appeal of decisions of the Building Official that structures are unsafe.   A municipality adopting such ordinance shall also be authorized to establish its own standards for declaring a structure to be unsafe, and for the repair or demolition of an unsafe structure, all consistent with the provisions of the Florida Building Code . . .

("Administrative and Appeals Process Requirement").

46.   As of the date of this lawsuit, Defendant MSV has failed to adopt its "own administrative process" to address unsafe structures, including providing for an appellate process. Consequently, Defendant MSV relies entirely on the Defendant MDC to administer the Administrative and Appeals Process Requirement under § 8-5.  Further, because MSV has not adopted its own administrative process, it is not authorized under §8-5 to establish its own criteria for declaring a structure to be "unsafe."

47.   As of the date of this lawsuit, Defendants MDC and MSV have failed to appropriately train MSV inspectors/ Building Official, including Defendant Naranjo to avoid due process violations or compliance with the due process provisions of § 8-5 of the MDCC, including those applicable to "emergency action."

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

*Physical Criteria for Unsafe Declaration*

48.     The physical criteria for determining whether a structure or building is "unsafe" within the meaning of § 8-5 is set forth in § 8-5(b)(1) through (3).  Said criteria shall hereinafter be referred to the "Physical Criteria Requirement."

49.     At all times material hereto, the Building does not and has never satisfied any of the aforesaid enumerated physical criteria or fell within the code definition of Physical Criteria Requirement of § 8-5(b).

*Emergency Action Procedures*

50.     Section 8-5(5) of the MDCC permits a Building Official to take certain "emergency actions" if the Building Official believed there is an "actual or immediate danger" to the building or persons.

> ***Emergency action***.  When in the opinion of the Building Official, there is actual or immediate danger of the failure or collapse of a building or structure, or there is a health, windstorm or fire hazard, he may order the occupants to vacate, temporarily close for use or occupancy the rights-of-way thereto, sidewalks, streets or adjacent buildings or nearby area and institute such other temporary safeguards, including securing the building or structure, as he may deem necessary under the circumstances, and may employ the necessary labor and materials to perform the required work as expeditiously as possible.  In such event, the operation of the notice and hearing requirements of this Section shall be ***suspended*** as reasonably necessary in the opinion of the Building Official to redress the emergency situation.  Costs incurred in the performance of such emergency work shall be paid by the appropriate governmental authority and upon the recording in the public records of this county of a certificate executed by the Building Official certifying the amount so expended, the same shall become a lien against the property involved.

("Emergency Procedures Requirements").

51.     As set forth in the Emergency Procedures Requirements, the Building Official may not eliminate due process requirements, that is, the "notice and hearing" requirements but instead can only temporarily suspend them as "reasonably" necessary.

**The Alderman Law Firm**
9999 NE 2nd Ave., Suite 211 ● Miami Shores, FL 33138 ● ph. 305.200.5473 ● fax. 305.200.5474

*Due Process Requirements of Notice and Hearing Under § 8-5 of the MDCC.*

52.     Section 8-5(h) of the MDCC sets for the "notice" due process requirements for when a Building Official deems a structure or building "unsafe." This section, in relevant part, requires the Building Official to:

      a.    **Preparation of a Formal Notice of Violation**. Specifically, § 8-5(h)(1) provides that "[t]he Building Official Shall prepare a notice of violation";

      b.    **Identification of Violation and Summary of Actions to Cure**. Specifically, § 8-5(h)(2) provides that the Building Official shall identify in the written notice of violation "in summary form the nature of defects which constitute a violation and shall prescribe the action to be taken to comply and the time within which compliance must be accomplished, such time not to exceed tent (1) days"; and,

      c.    **Identify and Explain Right to Appeal**. Specifically, § 8-5(h)(2) provides that the Notice of Violation provide the owner of the structure/ building with an explanation concerning the rights to an appeal of the Building Official 's declaration of unsafe structure, etc.

(the above-referenced due process requirements, in addition those set forth in § 8-5(h)(2) not referenced above, shall be referred to as the "§ 8-5(h)(2) Notice Requirements.").

53.     Section 8-5(i) of the MDCC sets forth the "opportunity to defend" requirement of due process, that is, the requirements of a "Public Hearing" for an owner of property which is declared "unsafe" thereunder.

54.     Specifically, and in relevant part, § 8-5(i) requires the Unsafe Structures Board or Unsafe Structures Appeal Panel to conduct a hearing and ". . . shall review all pertinent evidence and hear all testimony from the Building Official, the owner and other parties interest and their respective witnesses." The hearing required under this sub-section shall hereinafter be referred to as the "§ 8-5(I) Public Hearing Requirements."

55.     On November 6, 2017, Sarafan confirmed and notified informally of the MSV's finding to Julio Martinez by stating orally that MSV determined MSV had "every right to do what it did."

**C.     Defendants' Violations of Plaintiff AHE's Constitutional Rights, Immunities and Privileges.**

**(AHE's Constitutional Rights, Protections and Guaranties)**

56.     At all times material hereto, AHE possesses the constitutionally protected right and liberty to own and possess its property free from unconstitutional state action and constitutionally inadequate process.  "Due Process" under constitutional jurisprudence includes "procedural due process" and "substantive due process."  Under the Fourteenth Amendment to the United States Constitution, AHE, as a landowner, is entitled to "due process" protections from the arbitrary exercise of governmental power in contradiction and prejudice to constitutionally guaranteed rights and liberties.

57.     Under the Eighth Amendment to the United States Constitution, AHE, as a landowner, possess the constitutionally guaranteed right to protection from the imposition of "excessive fines."

58.     Under § 8-5 of the MDCC, imposes on Defendants MDC and MSV the obligation of fulfilling the Administrative and Appeals Process Requirement, including, but not limited to following, issuing, and/or implementing the Emergency Procedures Requirements, the § 8-5(h)(2) Notice Requirements, and the § 8-5(I) Public Hearing Requirements.

**(MSV and NARANJO'S Unconstitutional Actions and Deprivations as to AHE)**

*Failure to Provide Procedural Due Process*

59.     Defendant MSV independently, and through its Building Official Defendant Naranjo, deprived AHE of procedural due process intentionally and/or while acting in a grossly

indifferent manner, by failing to provide AHE with a proper notice under the § 8-5(h)(2) Notice Requirements. The Unsafe Building Notice is insufficient in that:

a. It does not constitute the "Notice of Violation" required under the § 8-5(h)(2) Notice Requirements;

b. Fails to set forth in summary form the nature of defects which constitute a violation;

c. Issued without Defendant Naranjo providing an evidentiary basis by Affidavit or otherwise;

d. Fails to explain the right of an appeal of the decision of the Building Official to the Unsafe Structures Board or an Unsafe Structures Appeal Panel; and,

e. Fails to advise that unless compliance with the directions of the Building Official, a case will be commenced before the Unsafe Structures Board or an Unsafe Structures Appeal Panel after time for compliance has expired or that the Building Official's order will be enforced.

60. In addition to the reasons stated in the immediately preceding paragraph, Defendant MSV, through its Building Official Defendant Naranjo, deprived AHE of procedural due process by the following:

a. Intentionally and willfully falsifying on the Unsafe Building Notice a date of "10-13-2017" when in fact the Unsafe Building Notice was affixed to the Building on October 30, 2017;

b. Intentionally and willfully falsifying on the Letter Violation false MSV Code Enforcement Case Number of "10-17-2462" when no such case exists;

c. Issuance of the Unsafe Declaration without any evidentiary support, including but not limited to, an affidavit of the Defendant Naranjo;

d. Resorting to the Emergency Action provisions of § 8-5(f) when there was no actual or immediate danger;

e. Failing to comply with the § 8-5 Emergency Procedures Requirements; and,

f. Failing to comply with the §8-5 Administrative and Appeals Process Requirements.

*Arbitrary and Capricious Application of § 8-5*

61.     In making the Unsafe Structure Declaration, Defendant MSV, through its Building

Official Naranjo, construed, interpreted and applied the Emergency Action and Physical Criteria

provisions § 8-5 of the MDCC in an arbitrary, capricious and unconstitutional manner for the

following reasons:

a.  Construing the Physical Criteria Requirements for an "unsafe structure" as to jurisdictionally include a vandalized lock and minor, occasional jamming;

b.  The utilization of Section 107 of the Building Code as a "Requirement for Correction" in order to purge the Unsafe Structure Declaration;

c.  The utilization of Chapter 8-10 of the Miami-Dade County Code as a "Requirement for Correction" in order to purge the Unsafe Structure Declaration;

d.  The utilization of "Miami Shores Village Code Ordinances" without identifying such ordinances in order to purge the Unsafe Structure Declaration, as same is unconstitutionally vague and exceeds the permitted scope of § 8-5;

e.  Invoking the Emergency Action Procedures of §8-5(5) of MDCC in the absences of a "reasonable" opinion that there is actual or immediate danger;

f.  Eliminating the Emergency Procedures Requirements of § 8-5(5) in posting the Unsafe Building Notice and making the Unsafe Structure Declaration;

g.  Issuing the Informal Notice of Violation, without providing Plaintiff AHE with notice and opportunity to challenge and in doing so without any evidentiary basis;

h.  Issuing the Information Email Violation, without providing Plaintiff AHE with notice and opportunity to challenge and in doing so without any evidentiary basis;

i.  Issuing the Rescission Email in attempt to deprive Plaintiff AHE of due process;

j.  Construing the fire and building codes as to require the Building's side entrance doors to permit egress and ingress door systems; and,

k.   Failing to take appropriate and timely actions and precautions so as to preserve and permit Plaintiff AHE with the a public hearing, as set forth in the Public Hearing Requirements.

(The actions, inactions, and deprivations identified in the paragraphs *supra* shall hereinafter be collectively referred to as "Unconstitutional Actions.").

*Punitive and Unreasonable Application of § 8-5 of MDCC*

62.   MSV's issuance, through Defendant Naranjo, of the Unsafe Building Notice, Unsafe Structure Declaration, and Letter Violation in the manner alleged above was objectively unreasonable because it violates clearly established rights of the Plaintiff AHE to due process, as alleged above, and to be free from excessive fines, as alleged above, because any reasonable person would have known that:

a.   The circumstances created by the Vandalized Lock, i.e., the minor jamming, did not satisfy the Physical Criteria for an unsafe structure within the meaning of § 8-5;

b.   The circumstances created by the Vandalized Lock, i.e., the minor jamming, did not satisfy and/or warrant "Emergency Action" resulting in the "suspension" of due process under §8-5 of the MDCC, particularly given the condition had existed for 17 prior days before the issuance of the Unsafe Building Notice, Unsafe Structure Declaration, and Letter Violation;

c.   Due process under §8-5 requires notification of a right to appeal and public hearing;

d.   Plaintiff AHE was entitled to due process for any and all of the informal violations and adjudications alleged above; and,

e.   In order to satisfy due process, MSV and Naranjo were required to provide some evidentiary basis to support or sustain the Unsafe Building Notice, Unsafe Structure Declaration, and Letter Violation.

63.   MSV's issuance, through Defendant Naranjo, of the Unsafe Building Notice, Unsafe Structure Declaration, and Letter Violation in the manner alleged above was objectively unreasonable, arbitrary, capricious manner, and in a manner that shocks the conscious of a good

faith and reasonable Building Official acting in the same or similar situation.   The subjection of the Building to demolition and/or forced sale is totally out of proportion to the gravity of the evil MSV supposedly intended to remedy.   Accordingly, Defendant Naranjo's issuance of the Unsafe Building Notice, Unsafe Structure and Letter Violation imposed the fine of demolition and asset forfeiture/ forced sale which is excessive under the circumstances identified above and in violation of the Plaintiff AHE's Eighth Amendment Constitutional right to be free from excessive fines.

64.     All conditions precedent to the bringing and maintenance of this action have either occurred, been excused, or otherwise waived.

-COUNT I-
### DECLARATORY JUDGMENT

Plaintiff, AHE, sues Defendants MDC, MSV, and Naranjo as the Building Official for Miami-Shores, and states as follows:

65.     Plaintiff AHE re-allege and incorporates paragraphs 1 through 64 as though fully set forth therein.

66.     This is an action for a declaratory judgment brought pursuant to Chapter 86, Florida Statutes.  Plaintiff AHE seeks a declaration of the constitutionality of Defendants MSV, MDC, and Naranjo's actions and inactions alleged above.   The declaration sought includes, but is not limited to, the following:

a.     whether Defendants MSV and Naranjo's interpretation, administration, and application of the Physical Criteria under §8-5 MDCC to the Vandalized Lock and/or instant controversy is constitutional or unconstitutional;

b.     whether Defendants MSV and Naranjo's Unsafe Building Notice complied with or violated § 8-5's due process requirements and/or is otherwise unconstitutional;

c.     whether Defendants MSV and Naranjo's reliance on the "emergency action" provisions of §8-5 is or was proper and constitutional, especially given that both relied upon the Informal Notice of Violation, 10/24 Informal Email Violation, 10/27 Naranjo Email;

d.   whether Defendants MSV and Naranjo's practice, policy and procedure to issue enforcement violations and/or curative instructions verbally and/or non-verbally and without supporting evidence, e.g., and affidavit complies with due process;

e.   whether Defendants MSV and Naranjo's failure to provide any formal or written withdrawal of the Letter Violation or document in the public records indicating that compliance and/or curative actions have been successfully obtained/ occurred;

f.   whether Defendants MSV and Naranjo's administration of the "emergency action" provisions of §8-5 with the Defendant MSV is unconstitutional on the grounds that it fails to provide due process; and,

g.   whether or not AHE is or was provided sufficient due process and/or its constitutional rights violated by any and/or all the Unconstitutional Actions cited above.

67.   There exists on the part of AHE a bona fide, actual, present practical need for the declaration sought.

68.   The declaration sought deals with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts.

69.   AHE's constitutional rights, powers, privileges, and immunities are dependent upon the aforesaid facts and/or applicable law to same.

70.   Defendants MDC, MSV, and Naranjo possess, or reasonably may possess, an actual, present, adverse and antagonistic interest in the subject matter at issue in this litigation and the declaration sought, either in fact or law.

71.   All antagonistic and adverse interests are all before the court by proper process or class representation and that the relief sought is not merely the giving of legal advice by the courts or questions propounded form curiosity.

WHEREFORE, Plaintiff AHE demands a declaratory judgment declaring the above together with any supplemental relief pursuant to Fla. Stat. § 86.061 and any other relief this Court deems just and proper.

-COUNT II-
## PETITION FOR WRIT OF MANDAMUS

Plaintiff, AHE, sues Defendants MSV, MDC, and Naranjo, and states as follows:

72.　　Plaintiff AHE re-allege and incorporates paragraphs 1 through 64 as though fully set forth therein.

73.　　This is a petition for the issuance of a Writ of Mandamus directing the MDC, MSV, and Naranjo to immediately and forthwith comply with due process and hearing requirements of §8-5 MDCC by scheduling a public hearing with the appropriate MDC board to hear the legal merits underlying the Unsafe Structure Declaration and Plaintiff's AHE's defenses thereto.

74.　　Plaintiff AHE possess a clear legal right to have a hearing on its appeal of the Unsafe Building Notice, Unsafe Structure Declaration, and Letter Violation, pursuant to Section 8-5(a)(1) of the Florida Building Code.

75.　　Under the Emergency Procedure Requirements of § 8-5(5) of MDCC, "notice and hearing" requirements may only be suspended as "reasonably necessary" in the opinion of the Building Official.

76.　　As of the date of the filing of this Complaint, neither MSV nor MDC have commenced or convened a public hearing or § 8-5(I) Public Hearing Requirements.

77.　　Plaintiff, AHE, lacks an adequate remedy at law.

WHEREFORE, Plaintiff AHE requests this Court to issue a Writ of Mandamus directed to MDC, MSV, and Naranjo, as stated above and together with any further relief this Court deems just and proper.

## -COUNT III-
## VIOLATION OF 42 U.S.C. § 1983 AS TO NARANJO

Plaintiff, AHE, sues Defendant, Naranjo, and states as follows:

78.     Plaintiff, AHE, realleges and reincorporates paragraphs 1 through 64 as though fully set forth therein.

79.     This is an action for damages and injunctive relief brought under 42 U.S.C. § 1983 to redress the willful, malicious and grossly indifferent actions and inactions of Defendant Naranjo, while acting under the "color of law" as the "Building Official" for Defendant MSV.

80.     As alleged above, Defendant Naranjo's actions and inactions, including the Unconstitutional Actions, deprived Plaintiff AHE of its rights, privileges, and immunities protected under the Fifth, Eight, and Fourteenth Amendments to the United States Constitution. By his actions and inactions, Naranjo deprived Plaintiff AHE of due process in connection with the constitutional liberty, right, and privilege of owning and possessing property free from governmental takings and interference.

81.     Specifically, Defendant Naranjo's issuance of the Unsafe Building Notice, Unsafe Structure, and Letter Violation willfully, maliciously and/or with gross indifference deprived Plaintiff AHE of the constitutionally protected liberty of ownership and possession of its property by seizing and excessively fining it without due process of the law, as stated above, including subjecting it to immediate forfeiture, sale and/or demolition.   Naranjo actions and inactions towards Plaintiff were conducted in an arbitrary and capricious manner, a manner that shocks the conscious of good faith and reasonable persons, including a "Building Official" acting in the same or similar situation.

82.     As a direct and proximate result of Defendant Naranjo's Unconstitutional Actions, as described above, Plaintiff AHE has been damaged and injured, as described above.  Plaintiff AHE's damages include, but not limited to, the following:

       a.     Attorneys' Fees;

       b.     Diminution in value of its property.

83.     Due to Defendant Naranjo's Unconstitutional Actions, coupled with MSV's position affirming the propriety of those actions/ inactions, and failure of Defendants MDC to provide the required oversight, training, and due process guarantees under § 8-5 of the MDCC, Plaintiff AHE is, thus, likely to suffer irreparable injury in the future.  Accordingly, in addition to damages, Plaintiff AHE seeks equitable relief, including, but not limited to, injunctive relief enjoying further deprivation of Plaintiff AHE's rights, privileges, or immunities secured by United States Constitution, as alleged above.

WHEREFORE, Plaintiff AHE demands judgment against Defendant Naranjo, both in his individual capacity and as his capacity as Building Official, for damages and further relief this Court deems just and proper, including but not limited to injunctive relief, together with an award of costs.

## -COUNT IV-
## <u>VIOLATION OF 42 U.S.C. § 1983 AS TO DEFENDANT MSV</u>

Plaintiff, AHE, sues Defendant, MSV, and states:

84.     Plaintiff AHE re-alleges and reincorporates paragraphs 1 through 64 and 80 through 83 as though fully set forth herein.

85.     This is an action for damages and injunctive relief brought under 42 U.S.C. § 1983 to redress the willful, malicious and grossly indifferent actions of MSV.

86.    Defendant MSV, in issuing the Unsafe Building Notice, Unsafe Structure Declaration, and Letter Violation relied exclusively on § 8-5 of the MDCC. As alleged above, MSV relies solely upon Defendant MDC to administer the due process requirements under § 8-5.

87.    Defendant MSV has failed to provide requisite training and oversight of Defendant Naranjo, acting in his capacity as Building Official for MSV.

88.    Defendant MSV has an informal policy of permitting Defendant Naranjo to make any and all decisions without any oversight concerning the construction, interpretation, and application of § 8-5 of the MDCC, without consultation or training from either the MSV City Attorney or MDC. Defendant MSV further as an informal policy that permits Defendant Naranjo to construe any applicable code, including §8-5 of the MDCC, in a manner that allows him to utilize his subjective opinion, as opposed to a reasonable, objective opinion, when the code provides opinion or discretionary latitude.

89.    Defendant MSV has a formal and informal policy of permitting Defendant Naranjo to issue verbal and non-verbal citations and violations without any evidentiary basis, e.g., affidavit, etc.

90.    Defendant MSV has an informal policy of permitting Defendant Naranjo to issue verbal and non-verbal citations and violations without any opportunity by the property owner to challenge the underlying verbal and non-verbal citation/ violation.

WHEREFORE, Plaintiff AHE demands judgment against Defendant MSV for damages and any further relief this Court deems just and proper, including but not limited to injunctive relief, together with an award of costs.

## -COUNT IV-
## VIOLATION OF U.S.C. § 1983 AS TO MDC

Plaintiff, AHE, sues Defendants, MDC, and states as follows:

91.     Plaintiff realleges and reincorporates paragraphs 1 through 64 and 80 through 83 as though fully set forth therein.

92.     This is an action brought under 42 U.S.C. § 1983 for redress caused by Defendant MDC's deprivation of Plaintiff AHE rights, privileges, and immunities protected under the Fifth, Eight, and Fourteenth Amendments to the United States Constitution.

93.     As alleged above, as of the date of this lawsuit, MSV has failed to adopt its "own administrative process" to address unsafe structures, including providing an appellate process. Consequently, Defendant MSV relies solely on MDC to administer the Administrative and Appeals Process Requirement under § 8-5.  Further, because MSV has not adopted its own administrative process, it is not authorized under § 8-5 to establish its own criteria for declaring a structure to be "unsafe."

94.     As alleged above, the failure of Defendant MDC to provide Plaintiff AHE with a public hearing or, notice and an opportunity to be heard, so it may contest the Unsafe Building Notice, Unsafe Structure Declaration, and Letter Violation, deprives Plaintiff AHE of its constitutional rights, privileges, and immunities of due process and freedom from excessive fines.

95.     Defendant MDC has failed to provide requisite training to municipalities who administer and enforce §8-5 of the MDCC.

WHEREFORE, Plaintiff AHE demands judgment against Defendant MDC for damages and any further relief this Court deems just and proper, including but not limited to injunctive relief, together with an award of costs.

## DEMAND FOR JURY TRIAL

Plaintiff AHE hereby demands a trial by jury on all issues so triable as a matter of right.

Respectfully submitted,

THE ALDERMAN LAW FIRM
*Attorneys for the Plaintiff*
9999 NE 2nd Avenue, Suite 211
Miami Shores, Florida 33138
Telephone:305-200-5473
Facsimile: 305-200-5474
E-Mail:jalderman@thealdermanlawfirm.com

By: */s/ Jason R. Alderman*_____
    Jason R. Alderman
    Florida Bar No. 172375
    Kristy M. Johnson
    Florida Bar No. 144282
    Troy A. Tolentino
    Florida Bar No. 117981

# EXHIBIT A

# EXHIBIT B

**Tom Benton**

| | |
|---|---|
| **From:** | Ismael Naranjo |
| **Sent:** | Friday, October 27, 2017 1:23 PM |
| **To:** | Jason Alderman; Julio Martinez |
| **Cc:** | Tom Benton; Steven W. Zelkowitz; Mac Glinn; Alice Burch; Jonathan Meltz; Lazaro Remond; rsarafan@gjb-law.com |
| **Subject:** | RE: 9999 NE 2nd Ave. |

Good afternoon Mr. Alderman,

No, I was not aware that you represent Julio and AHE's. Over the past two weeks we have met with Julio several times regarding the issue with the unsafe condition related to the egress door on the Northside of the building. We have tried every way possible to work with your client. Julio has failed to find a permanent solution to correct the problem. This is a life safety issue and thereby must be corrected immediately.

I know the impact that an unsafe building will have on all the tenants on the building, believe me it is the last thing I want to do, however we need to protect the safety of everyone that works and visits this building. Julio must take immediate action to complied. The reason that I told Julio (on my email from October 24, 2017) to maintain the door operable from both sides is because that is the only way that the existing door will not have a problem.

Egress doors, should complied with the requirements of section 108 of the 2014 Florida Building Code, Building.

Thank you.

 Ismael Naranjo, BO, CFM

**Building Director**



**Miami Shores Village**

**10050 NE 2 Ave**
**Miami Shores, FL 33138**

**Office: 305-795-2204**

**Fax: 305-756-8972**

www.miamishoresvillage.com

**From:** Jason Alderman [mailto:jalderman@thealdermanlawfirm.com]
**Sent:** Thursday, October 26, 2017 9:23 AM
**To:** Ismael Naranjo <NaranjoI@msvfl.gov>; Julio Martinez <JulioMartinez@hightowermgr.com>
**Cc:** Tom Benton <BentonT@msvfl.gov>; Steven W. Zelkowitz <Steven.Zelkowitz@gray-robinson.com>; Mac Glinn
<MacGlinn@msvfl.gov>; Alice Burch <AliceBurch@msvfl.gov>; Jonathan Meltz <jmeltz@meltzlaw.com>
**Subject:** RE: 9999 NE 2nd Ave.

Ismael,

As you know I'm Julio and AHE's counsel. I will be responding to your emails, as well
as addressing the overall situation on behalf of my client in the days to come.

I'm also emailing you as a tenant in 9999 Building.

You state in your email "building will be order to be vacated imediately." [sic]. I obviously don't have to
tell you the impact that would have on the tenant law firms and medical offices and the
ensuing actions we will take based upon your erroneous position taken outside the
normal channels of enforcement, lack due process etc.

ja

Jason R. Alderman
The Alderman Law Firm
9999 NE Second Avenue, Suite 211
Miami Shores, FL 33138
305-200-5473 Main Line
786-464-0192 Direct Line
305-200-5474 Facsimile
Website: www.thealdermanlawfirm.com
Email address: Jalderman@thealdermanlawfirm.com

 THE ALDERMAN LAW FIRM

*CONFIDENTIALITY NOTE: The information contained in this transmission is privileged and confidential information
intended only for the use of the individual or entity named above. If the reader of this message is not the intended
recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly
prohibited. If you have received this transmission in error, do not read it. Please immediately reply to the sender that you
have received this communication in error and then delete it. Thank you.*

*CIRCULAR 230 NOTICE: To comply with U.S. Treasury Department and IRS regulations, we are required to advise you
that, unless expressly stated otherwise, any U.S. federal tax advice contained in this e-mail, including attachments to this
e-mail, is not intended or written to be used, and cannot be used, by any person for the purpose of (i) avoiding penalties
under the U.S. Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any transaction or
matter addressed in this e-mail or attachment.*

**From:** Ismael Naranjo [mailto:NaranjoI@msvfl.gov]
**Sent:** Thursday, October 26, 2017 8:14 AM
**To:** Julio Martinez <JulioMartinez@hightowermgr.com>
**Cc:** Jason Alderman <jalderman@thealdermanlawfirm.com>
**Subject:** Re: 9999 NE 2nd Ave.

Good morning Julio,

All 4 doors on this building are designated as means if egress. This is not a game. You must take immediate action to keep the doors operational at all times. See email below dated 10-24-2017.

Thank you.

Sent from my iPhone

On Oct 25, 2017, at 6:04 PM, Julio Martinez <JulioMartinez@hightowermgr.com> wrote:

> Mr. Naranjo the egress door is in complying with Florida Building Code and Miami Dade County Code for the Particular Occupancy they are the front and back doors of the building, the side doors if you are referring to this one are emergency exit door ONLY.
>
> **From:** Ismael Naranjo [mailto:NaranjoI@msvfl.gov]
> **Sent:** Tuesday, October 24, 2017 8:12 AM
> **To:** Julio Martinez <JulioMartinez@hightowermgr.com>; JulioMartinez@shoreviewcenter.com
> **Cc:** Tom Benton <BentonT@msvfl.gov>; Lazaro Remond <remondI@msvfl.gov>; Arlenis Silvera <SilveraA@msvfl.gov>
> **Subject:** 9999 NE 2nd Ave.
>
> Good morning Julio,
>
> The conditions of the egress door at 9999 NE 2nd Ave. creates hazards with respect to means of egress and fire protection as provided under the Florida Building Code and Miami Dade County Code for the particular Occupancy. You are hereby order to maintain the egress door open at all time. The door should be operable from both sides without the use of a key, tool and or special knowledge. Failure to comply with this order immediately will result in an unsafe structure and the building will be order to be vacated imediately.
>
>
> Thank you.
>
>  Ismael Naranjo, BO, CFM
>
> **Building Director**
>
> <image001.jpg>
>
> Miami Shores Village
>
> 10050 NE 2 Ave
> Miami Shores, FL 33138
>
> Office: 305-795-2204

3

Fax: 305-756-8972

www.miamishoresvillage.com

# EXHIBIT C



# EXHIBIT D

**Tom Benton**

| | |
|---|---|
| **From:** | Ismael Naranjo |
| **Sent:** | Tuesday, October 31, 2017 12:55 PM |
| **To:** | Jason Alderman; JulioMartinez@shoreviewcenter.com |
| **Cc:** | Tom Benton; Lazaro Remond; Arlenis Silvera |
| **Subject:** | RE: 9999 NE 2nd Ave. |
| **Attachments:** | UB 9999 NE 2nd Ave..docx |

Good afternoon Mr. Alderman,

When I say that the unsafe building notice has been removed, I meant that the requirement for correction noted on the unsafe building notice has been cured, the notice was recinded. The actions taken to correct the violation satisfy the requirements for the means of egress. Attached please find a copy of the unsafe notice I emailed you yesterday, the notice reflects the case number as UB-10-17-2462.

Thank you.

 Ismael Naranjo, BO, CFM

**Building Director**



**Miami Shores Village**

**10050 NE 2 Ave**
**Miami Shores, FL 33138**

Office: <u>305-795-2204</u>

Fax: <u>305-756-8972</u>

<u>www.miamishoresvillage.com</u>

**From:** Jason Alderman [mailto:jalderman@thealdermanlawfirm.com]
**Sent:** Tuesday, October 31, 2017 12:27 PM
**To:** Ismael Naranjo <NaranjoI@msvfl.gov>; JulioMartinez@shoreviewcenter.com
**Cc:** Tom Benton <BentonT@msvfl.gov>; Lazaro Remond <remondl@msvfl.gov>; Arlenis Silvera <SilveraA@msvfl.gov>

**Subject:** RE: 9999 NE 2nd Ave.
**Importance:** High

Ismael, we need to be very clear.

When you say that the "unsafe building" notice has been "removed", you mean rescinded and the building is now a safe structure?

Also, your notice did not provide a Case Number for either the Miami-Dade County or Miami Shores Code Enforcement Board (which I don't believe handles unsafe structure declarations). Can you either provide the case number with Miami-Dade County Unsafe Structure Board or Miami Shores Code Enforcement for your "notice" or confirm no case number exists.

ja

**Jason R. Alderman**
The Alderman Law Firm
9999 NE Second Avenue, Suite 211
Miami Shores, FL 33138
305-200-5473 Main Line
786-464-0192 Direct Line
305-200-5474 Facsimile
Website: www.thealdermanlawfirm.com
Email address: Jalderman@thealdermanlawfirm.com

 THE ALDERMAN LAW FIRM

*CONFIDENTIALITY NOTE: The information contained in this transmission is privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, do not read it. Please immediately reply to the sender that you have received this communication in error and then delete it. Thank you.*

*CIRCULAR 230 NOTICE: To comply with U.S. Treasury Department and IRS regulations, we are required to advise you that, unless expressly stated otherwise, any U.S. federal tax advice contained in this e-mail, including attachments to this e-mail, is not intended or written to be used, and cannot be used, by any person for the purpose of (i) avoiding penalties under the U.S. Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this e-mail or attachment.*

**From:** Ismael Naranjo [mailto:NaranjoI@msvfl.gov]
**Sent:** Tuesday, October 31, 2017 12:07 PM
**To:** Jason Alderman <jalderman@thealdermanlawfirm.com>; JulioMartinez@shoreviewcenter.com
**Cc:** Tom Benton <BentonT@msvfl.gov>; Lazaro Remond <remondl@msvfl.gov>; Arlenis Silvera <SilveraA@msvfl.gov>
**Subject:** 9999 NE 2nd Ave.

Good morning Mr. Alderman,

As a result of the inspection performed today the unsafe building notice has been removed.

Thank you.

 Ismael Naranjo, BO, CFM

**Building Director**



**Miami Shores Village**

**10050 NE 2 Ave**
**Miami Shores, FL 33138**

Office: 305-795-2204

Fax: 305-756-8972

www.miamishoresvillage.com

# EXHIBIT E

Miami Shores Village
Building Department
10050 N.E.2nd Avenue
Miami Shores, Florida 33138
Tel: (305) 795.2204
Fax: (305) 756.8972

## UNSAFE BUILDING

DATE: October 30, 2017

CASE NUMBER: UB-10-17-2462

TO: City National Bank of FLA
     25 W. Flagler St. #711
     Miami, Florida 33130-1718

RE: Shoreview Center
     9999 NE 2nd Ave.
     Miami Shores, Florida 33138

FOLIO: 11-3206-013-4490

YOU ARE HEREBY NOTIFIED that an inspection of the above premises revealed that the
buildings within this property is as defined under section 8-5 of the Miami Dade County Code
unsafe, or deficient, facilities with inadequate means of egress, or which constitute a fire or
windstorm hazard, or are otherwise dangerous to human life or public welfare by reason of
illegal or improper use, occupancy or maintenance, or which have been substantially damaged.
A permit shall be obtained to bring the building into compliance with the applicable codes as
provided herein. The buildings within this property should be vacated immediately and no one
may enter or occupied the building without authorization from the Miami Shores Village
Building Official.

Type of Violation: Failure to maintain adequate means egress on the North side of the
building.

Section 8-5 Of the Miami Dade County Code.

(a) *General.*

(2) Buildings or structures that are, or hereafter shall become, unsafe, unsanitary or deficient, facilities with inadequate means of egress, or which constitute a fire or windstorm hazard, or are otherwise dangerous to human life or public welfare by reason of illegal or improper use, occupancy or maintenance, or which have been substantially damaged by the elements, acts of God, fire, explosion or otherwise, shall be deemed unsafe structures and a permit shall be obtained to demolish the structure or where specifically allowed by this section, to bring the building into compliance with the applicable codes as provided herein.

(b) *Physical criteria.*

1. A building shall be deemed a fire hazard and/or unsafe when:

(iii) The building condition creates hazards with respect to means of egress and fire protection as provided herein for the particular Occupancy.

(3) A building, or part thereof, shall be presumed to be unsafe if:

(iv) By reason of illegal or improper use, occupancy or maintenance does not comply with the Building Code, or the code in effect at the time of construction.

**REQUIREMENTS FOR CORRECTION:**

Remove the locking hardware from the door until the door is permanently repaired or replaced. If replacing the door, provide plans with details and specifications as required under section 107 of the 5TH Edition of the 2014 Florida Building Code, chapter 8-10 of the Miami Dade County Code and Miami Shores Village Code of Ordinances. Obtain required permits, pass required inspections.

In the event further clarification or assistance is required, please contact Ismael Naranjo, B.O at (305) 795-2204 between the hours of 8:30 A.M. and 5:00 PM. or by e-mail to bo@msvfl.gov

Thank you for your cooperation in this matter.

Ismael Naranjo, B.O
Building Director.

Mail

By:_____

Posted

By:_____

Date Posted:

Date Mailed:

Return Receipt Number



U.S. Postal Service
CERTIFIED MAIL   RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

OFFICIAL USE

Postage   $ 6.56

Certified Fee

Return Receipt Fee
(Endorsement Required)

Restricted Delivery Fee
(Endorsement Required)

Total Postage & Fees   $ 6.56

Sent To   JASON R. ALDERMAN   THE ALDERMAN LAW FIRM
Street, Apt. No.; or PO Box No.   9999 NE 2 AVE   211
City, State, ZIP+4   MIAMI SHORES, FL 33138

# EXHIBIT F



November 3, 2017

<u>**Via U.S. Mail and Certified Mail**</u>
Mr. Ismael Naranjo, Building Official
Ms. Ysabely Rodriguez, Village Clerk
Miami Shores Village
10050 NE 2nd Avenue
Miami Shores, Florida 33138

RE:   **CASE NO. UB-10-17-2462**
      **Shoreview Center**
      **9999 NE 2nd Ave**
      **Miami Shores, Florida 33138**
      **Folio: 11-3206-013-4490**

RE:  RE:  NOTICE OF APPEAL OF DECLARATION OF CASE NO. UB-10-17-2462

To Building Official Ismael Naranjo and the Village Clerk:

This firm is litigation counsel to AHE Realty Assoc., LLC ("AHE"), owner of the Shoreview Building (the "Building"). This letter is written to the both of you in your capacities as the Building Official for the Village and the City Clerk.

<u>The purpose of this letter is preserve and assert AHE's rights to a due process hearing and an appeal of the Village's declaration of the Building as an "unsafe structure" and to exhaust any administrative remedies it may possess concerning the Village's actions.</u>

Reference is made to Section 8-5 of the Miami-Dade County Code ("MDCC Code") governing "Unsafe Structures."

My client has been intentionally denied basic due process rights by the wholesale, willful and malicious failure of the Village of Miami Shores (the "Village") to comply with Section 8-5 of the MDCC Code, Florida Statutes 162.01, *et. seq.*, as well as the Village's malicious and unconstitutional application of Section 8-5 to the Building. Although a Building Official is provided wide latitude in many instances, the constitutional guarantees provided under the Federal and State Constitution, Fla. Stat. 162.01, et. seq,, as well as Section 8-5 itself, significantly curtails such latitude by prohibiting a Building Official from selectively enforcing a code or ordinance or enforcing same in an arbitrary and capricious manner.

The Village's actions have jeopardized a multi-million dollar mortgage, over 30 lease agreements, and had the potential of creating tens of millions of dollars in damages to Miami Shores businesses. Given the Village's rescission of the underlying notice, and failure to provide

Miami Shores Village
November 3, 2017
Page 2

basic due process rights on the matter, AHE's position is that there are no further administrative remedies that it must exhaust as a condition precedent to perfecting any legal claims and filing suit in circuit court. Notwithstanding the village's rescission, <u>this letter shall serve as a demand for a due process hearing to contest the Village's actions and an appeal pursuant.</u>

### The Village's Improper Declaration of Unsafe Structure Status

On October 30, 2017, the Village, through its Building Official, Ismael Naranjo, posted an "Unsafe Building" orange notice (the "Notice"). For ease of reference, a color copy is enclosed herewith as Exhibit 1. The Notice *inter alia* designates the Shoreview Building as an "unsafe structure." Further, on its face required the <u>immediate</u> evacuation of the Building.

On the same date, the Village, once again through Ismael Naranjo, sent a letter (the "Naranjo Letter") to AHE Realty's Mortgage Trust Company City National Bank of Fla, notifying it of the Village's action. A copy of this letter is enclosed herewith as Exhibit 2.

The Notice is silent as to the purported condition underlying the Village's declaration of Building as an "unsafe structure." Communications between AHE's building manager and counsel over the preceding three (3) weeks confirmed that the "issue" involves the purported failure of the fire exit door on the northside of the building to properly open.[1]

On October 30, 2017, certain measures were taken relative to the door after consultation with the City Manager. A video of the door opening was sent to Mr. Naranjo and the City Manager on October 31, 2017.

On October 31, 2017, the Notice was removed from the Building. Mr. Naranjo rescinded the Notice. The rescission of the Notice was confirmed in email, a copy of which is enclosed herewith as Exhibit 3.

On November 2, 2017, after the conclusion of a Code Enforcement Board Meeting at City Hall, the City Attorney indicated in a conversation witnessed by several people, including myself, that the City had every right to declare the Building "unsafe," <u>a conclusion reached prior to my client being permitted any hearing or due process on the matter.</u>

### AHE's Demand for Strict Compliance with Fla. Stat. 162.01, et. seq., Sec. 8-5 Notice and Hearing Requirements, and AHE's Due Process Rights

Mr. Naranjo and the Notice failed to comply with MD Code Section 8-5(h)(2) in that:

1.     Mr. Naranjo failed to prepare an actual "Notice of Violation";

---

[1] AHE intentionally omits from this letter any explanation or legal analysis as to why the Village's interpretation and application of Section 8-5 to render the Building "unsafe" is patently absurd. The Village knows very well that its attempt to "strong arm" AHE's building manager is without any basis in law or fact.

Shoreview Center • 9999 NE 2nd Avenue • Suite 211 • Miami Shores, Florida 33138 • Office: 305.200.5473 • Fax: 305.200.5474

WWW.THEALDERMANLAWFIRM.COM

Miami Shores Village
November 3, 2017
Page 3

2.  The Notice fails to set forth in summary form the nature of defects which constitute a violation;

3.  The Notice fails to prescribe the action to be taken to comply and the time within the which the compliance must be accomplished;

4.  The Notice fails to explain the right of appeal of the decision of the Building Official to the Unsafe Structures Board or an Unsafe Structures Appeal Panel;

5.  The Notice fails to advise that unless compliance with the directions of the Building Official a case will be commenced before the Unsafe Structures Boar or an Unsafe Structures Appeal Panel after time for compliance has expired or that the Building Official's order will be enforced; and,

6.  Lastly, for reasons which will be the subject of the Civil Lawsuit against the Village, Mr. Naranjo erroneously, maliciously, and/or in an arbitrary and capricious manner shut down the Shoreview Building without providing AHE due process and more importantly, intentionally and maliciously misapplied the County's Unsafe Structure Code, Section 8.5.

Once again, AHE hereby demands that the Village comply with the due process requirements of United States Constitution, Florida Constitution, Florida Statute 162.01, et. seq., and in more particular, the Miami-Dade County Code set forth in Section 8-5. This includes issuing the proper notices, providing my client with a due process hearing and the right to an ensuing appeal, and provide notice to the proper parties and addresses. My client will need six (6) hours of hearing time to rebut any evidence put on by the Village. We intend to call approximately ten (10) fact witnesses and will be providing expert witness testimony.

AHE underscores to the Village that, to the extent Mr. Naranjo relies on the "emergency action" provision set forth in Section 8(5)(f) to justify his actions of failure to provide notice, that provision only permits "suspension" of notice and hearing as "reasonably necessary," not the wholesale elimination of a hearing and due process.

Sincerely,

Jason R. Alderman

JRA/em

Enclosures

cc:   Mr. Tom Benton, Village Manager
      Mr. Julio Martinez, Building Manager
      Richard Sarafan, Esq.

Shoreview Center • 9999 NE 2nd Avenue • Suite 211 • Miami Shores, Florida 33138 • Office: 305.200.5473 • Fax: 305.200.5474

W W W . T H E A L D E R M A N L A W F I R M . C O M

# Exhibit 1



Exhibit 2

Miami Shores Village
Building Department
10050 N.E.2nd Avenue
Miami Shores, Florida 33138
Tel: (305) 795.2204
Fax: (305) 756.8972

## UNSAFE BUILDING

**DATE:** October 30, 2017

**CASE NUMBER: UB-10-17-2462**

**TO:** City National Bank of FLA
       25 W. Flagler St. #711
       Miami, Florida 33130-1718

**RE:** Shoreview Center
       9999 NE 2nd Ave.
       Miami Shores, Florida 33138

**FOLIO:** 11-3206-013-4490

YOU ARE HEREBY NOTIFIED that an inspection of the above premises revealed that the buildings within this property is as defined under section 8-5 of the Miami Dade County Code unsafe, or deficient, facilities with inadequate means of egress, or which constitute a fire or windstorm hazard, or are otherwise dangerous to human life or public welfare by reason of illegal or improper use, occupancy or maintenance, or which have been substantially damaged. A permit shall be obtained to bring the building into compliance with the applicable codes as provided herein. The buildings within this property should be vacated immediately and no one may enter or occupied the building without authorization from the Miami Shores Village Building Official.

**Type of Violation:** Failure to maintain adequate means egress on the North side of the building.

Section 8-5 0f the Miami Dade County Code.

(a) *General.*

    (2)  Buildings or structures that are, or hereafter shall become, unsafe, unsanitary or deficient, facilities with inadequate means of egress, or which constitute a fire or windstorm hazard, or are otherwise dangerous to human life or public welfare by reason of illegal or improper use, occupancy or maintenance, or which have been substantially damaged by the elements, acts of God, fire, explosion or otherwise, shall be deemed unsafe structures and a permit shall be obtained to demolish the structure or where specifically allowed by this section, to bring the building into compliance with the applicable codes as provided herein.

(b) *Physical criteria.*

    1.  A building shall be deemed a fire hazard and/or unsafe when:

        (iii) The building condition creates hazards with respect to means of egress and fire protection as provided herein for the particular Occupancy.

(3) A building, or part thereof, shall be presumed to be unsafe if:

        (iv) By reason of illegal or improper use, occupancy or maintenance does not comply with the Building Code, or the code in effect at the time of construction.

**REQUIREMENTS FOR CORRECTION:**

Remove the locking hardware from the door until the door is permanently repaired or replaced. If replacing the door, provide plans with details and specifications as required under section 107 of the 5TH Edition of the 2014 Florida Building Code, chapter 8-10 of the Miami Dade County Code and Miami Shores Village Code of Ordinances. Obtain required permits, pass required inspections.

In the event further clarification or assistance is required, please contact Ismael Naranjo, B.O at (305) 795-2204 between the hours of 8:30 A.M. and 5:00 PM. or by e-mail to bo@msvfl.gov

Thank you for your cooperation in this matter.

Ismael Naranjo, B.O
Building Director.

Mail                         Date Mailed:
By:_____    Return Receipt Number:
Posted
By:_____
Date Posted:

Exhibit 3

| From: | Jason Alderman |
|---|---|
| To: | Ismael Naranjo |
| Cc: | JulioMartinez@shoreviewcenter.com; Tom Benton; Lazaro Remond; Arlenis Silvera; Troy Tolentino; Marta Golani; Kristy Johnson |
| Subject: | Re: 9999 NE 2nd Ave. |
| Date: | Tuesday, October 31, 2017 1:02:15 PM |
| Attachments: | UB 9999 NE 2nd Ave..docx |

Thank you. Under section 8-5 of the County Code a building official may only "suspend" due process. More importantly there are certain required disclosures/ information which your notice did not comply with/ failed to contain,  as well as less restrictive enforcement criteria (closing of hallway serviced by fire exit) than complete vacation of the building (assuming 8-5 applied on the first instance).  We can agree to disagree on your authority/ lack of authority to have taken the action you did.

We intend on appealing to the board the issuance of the notice.  I respectfully request that you comply w the remainder of the  notice requirements.

Thank you and have a good day.

Sent from my iPhone

On Oct 31, 2017, at 12:55 PM, Ismael Naranjo <NaranjoI@msvfl.gov> wrote:

> Good afternoon Mr. Alderman,
>
> When I say that the unsafe building notice has been removed, I meant that the requirement for correction  noted on the unsafe building notice has been cured, the notice was recinded. The actions taken to correct the violation satisfy the requirements for the means of egress. Attached please find a copy of the unsafe notice I emailed you yesterday, the notice reflects the case number as UB-10-17-2462.
>
> **Thank you.**
> **Ismael Naranjo, BO, CFM**
> **Building Director**
> **<UB 9999 NE 2nd Ave..docx>**
> **Miami Shores Village**
> **10050 NE 2 Ave**
> **Miami Shores, FL 33138**
> **Office: 305-795-2204**
> **Fax: 305-756-8972**
> **www.miamishoresvillage.com**
>
> **From:** Jason Alderman [mailto:jalderman@thealdermanlawfirm.com]
> **Sent:** Tuesday, October 31, 2017 12:27 PM
> **To:** Ismael Naranjo <NaranjoI@msvfl.gov>; JulioMartinez@shoreviewcenter.com
> **Cc:** Tom Benton <BentonT@msvfl.gov>; Lazaro Remond <remondI@msvfl.gov>; Arlenis

Silvera <SilveraA@msvfl.gov>
**Subject:** RE: 9999 NE 2nd Ave.
**Importance:** High

Ismael, we need to be very clear.

When you say that the "unsafe building" notice has been "removed", you mean rescinded and the building is now a safe structure?

Also, your notice did not provide a Case Number for either the Miami-Dade County or Miami Shores Code Enforcement Board (which I don't believe handles unsafe structure declarations). Can you either provide the case number with Miami-Dade County Unsafe Structure Board or Miami Shores Code Enforcement for your "notice" or confirm no case number exists.

ja

Jason R. Alderman
The Alderman Law Firm
9999 NE Second Avenue, Suite 211
Miami Shores, FL 33138
305-200-5473 Main Line
786-464-0192 Direct Line
305-200-5474 Facsimile
Website: www.thealdermanlawfirm.com
Email address: Jalderman@thealdermanlawfirm.com
**<image002.jpg>**

*CONFIDENTIALITY NOTE: The information contained in this transmission is privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, do not read it. Please immediately reply to the sender that you have received this communication in error and then delete it. Thank you. CIRCULAR 230 NOTICE: To comply with U.S. Treasury Department and IRS regulations, we are required to advise you that, unless expressly stated otherwise, any U.S. federal tax advice contained in this e-mail, including attachments to this e-mail, is not intended or written to be used, and cannot be used, by any person for the purpose of (i) avoiding penalties under the U.S. Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this e-mail or attachment.*

**From:** Ismael Naranjo [mailto:NaranjoI@msvfl.gov]
**Sent:** Tuesday, October 31, 2017 12:07 PM
**To:** Jason Alderman <jalderman@thealdermanlawfirm.com>;
JulioMartinez@shoreviewcenter.com
**Cc:** Tom Benton <BentonT@msvfl.gov>; Lazaro Remond <remondl@msvfl.gov>; Arlenis
Silvera <SilveraA@msvfl.gov>
**Subject:** 9999 NE 2nd Ave.

Good morning Mr. Alderman,

As a result of the inspection performed today the unsafe building notice has been
removed.

**Thank you.**
 **Ismael Naranjo, BO, CFM**
**Building Director**
 **<UB 9999 NE 2nd Ave..docx>**
**Miami Shores Village**
**10050 NE 2 Ave**
**Miami Shores, FL 33138**
**Office: 305-795-2204**
**Fax: 305-756-8972**
**www.miamishoresvillage.com**


<UB 9999 NE 2nd Ave..docx>

<UB 9999 NE 2nd Ave..docx>

# EXHIBIT G



RICHARD SARAFAN
VILLAGE ATTORNEY

100 S.E. 2ND ST. 44TH FLOOR
BANK OF AMERICA TOWER
MIAMI, FLORIDA 33131
(305) 349-2300 - (305) 349-2310 (FAX)

Richard Sarafan
Direct Line: 305.349.2318
Direct Fax: 305.428.8828
Email: rsarafan@gjb-law.com

November 9, 2017

**Via U.S. Mail**
**and Email jalderman@thealdermanlawfirm.com**
Jason Alderman, Esq.
The Alderman law Firm
Shoreview Center
9999 NE 2nd Avenue, Suite 211
Miami Shores, FL 33138

Re:   **Notice of Appeal of Declaration of Case No. UB-17-2462**

Dear Mr. Alderman:

As you are aware I am the Miami Shores Village Attorney. We acknowledge receipt of your "Notice of Appeal of Declaration of Case No. UB–10–17–2462" emailed to the Village Building Official and Village Clerk after 5:00 p.m. on Friday, November 3, 2017.

As I am sure you understand, the Village disputes much of what is contained in your email. Your email itself, and the attachments thereto, seems to confirm that the Building Official had been in communication with your client's representative for weeks trying to get your client to comply with the clear provisions of law being violated by the locked fire exit door, without success. Ultimately, in accordance with his duties as Building Official, Mr. Naranjo took appropriate action under the Unsafe Structures provisions available to him. Almost immediately thereafter, your client corrected the violation, and, upon that fact being confirmed by Mr. Naranjo, he in turn confirmed that the violation had been cured. Under all of the circumstances, we are a bit confused about exactly what it is you now are seeking in your email.



*Jason Alderman, Esq.*
*November 9, 2017*
*Page 2*

However, it is at least clear from your email that you desire to pursue an Appeal of the Building Official's determination.

Accordingly the Village has notified the Board Administration Section of the County's Department that deals with the County's Unsafe Structures Board and is forwarding them a copy of your Notice of Appeal. Upon the County's receipt and review thereof we understand they will be contacting both the Village and you directly to provide information as to how the matter will be addressed. Thank you.

Very truly yours,

Richard Sarafan

RS/dr

cc:    Ismael Naranjo (via email)

(7718-001 / 2796342 / #9724)